# Detail of Law Enforcement Agents to Congressional Committees

Details of Department of Justice law enforcement agents to congressional committees are statutorily authorized provided the details are made on a reimbursable basis

Such details do not violate the constitutional principles of separation of powers as long as the details are advisory in nature, involve functions not required by the Constitution to be performed by an "officer" of the United States, and when there are particularly compelling policy reasons for the assignment that outweigh any separation of powers concerns.

Due to the substantial policy and ethical concerns such details raise, the Department should consider a reimbursable detail only after a careful examination of the functions to be performed and consideration of the conflicts likely to arise.

September 13, 1988

MEMORANDUM OPINION FOR THE ACTING DEPUTY ATTORNEY GENERAL

## Introduction and Summary

This responds to a request from James Byrnes, formerly of your office, as to the legality and appropriateness of detailing Department of Justice law enforcement agents to congressional committees.[1] For the reasons outlined below, we find that there is legal authority to support such details as long as the details are made on a reimbursable basis. No constitutional issue is implicated as long as it is carefully ascertained and observed that the functions to be performed by the detailed employee are not those of an "officer" of the United States. We believe, however, that such details do raise separation of powers concerns, because they place an employee in the difficult position of serving two masters with conflicting interests—the legislative and executive branches—and because such details create the risk that privileged executive branch information and plans may be dis-

---

[1] Department of Justice regulations require Department components to obtain approval of the Deputy Attorney General before details of employees outside the Department can be effected or extended Mr. Byrnes asked this Office for guidance with respect to four individual requests *See, e g* , Memorandum for Charles J Cooper, Assistant Attorney General, Office of Legal Counsel, from James Byrnes, Associate Deputy Attorney General (June 18, 1987). The Federal Bureau of Investigation ("FBI") proposed to send two FBI agents to the Senate Permanent Subcommittee on Investigations One of those requests was withdrawn by the FBI; with respect to the other request, the agent did complete the detail, which was arranged on a reimbursable basis. Recently, an extension of this detail has been requested. *See* Memorandum for Harold C. Christensen, Acting Deputy Attorney General, from Harry H. Flickinger, Assistant Attorney General, Office of Legal Counsel (Aug. 22, 1988) The Drug Enforcement Administration ("DEA") proposed to send one DEA special agent to the House Judiciary Subcommittee on Crime and one special agent to the Select Committee on Narcotics Abuse and Control for the 100th Congress. We understand that the former detail was terminated by the Subcommittee within days after the agent commenced the detail; the latter request was withdrawn by the DEA. We have prepared this opinion in order to provide you with guidance in reviewing the request for extension as well as future requests for such details.

closed inappropriately. Moreover, these details may raise potential ethical concerns under the ABA Model Code of Professional Responsibility or analogous codes of professional conduct. In light of these concerns, we do not believe that these details should be approved as a matter of routine practice. Instead, each proposed detail should be carefully scrutinized to determine whether the particular functions to be performed by the employee can be constitutionally undertaken by someone outside the direct supervision of the executive branch and, if so, whether the benefits to be gained by the law enforcement agencies are sufficiently extraordinary to outweigh the separation of powers and ethical concerns raised by the detail.

## 1. Statutory Authority

This Office has previously construed 2 U.S.C. § 72a(f) to provide implicit legal authority for assignments of executive branch personnel to various congressional committees.[2] Section 72a(f) provides:

> No committee shall appoint to its staff any experts or other personnel detailed or assigned from any department or agency of the Government, except with the written permission of the Committee on Rules and Administration of the Senate or the Committee on House Administration of the House of Representatives, as the case may be.

The theory behind this Office's longstanding interpretation is that it would be superfluous for Congress to impose a statutory prohibition against the appointment of detailed personnel except under specified conditions unless the detail of personnel was already authorized. Accordingly, the precedent of this Office supports the view that there is statutory authority for the FBI and the DEA to send law enforcement agents to congressional committees on a reimbursable basis.[3]

---

[2] See. e g , Detail of Department of Justice Attorneys to Congressional Committees, 1 Op. O.L.C. 108 (1977); Memorandum from Leon Ulman, Deputy Assistant Attorney General, Office of Legal Counsel, Re · Authority for Detail of Executive Branch Personnel (Assistant United States Attorney) to a Select Committee in the House of Representatives (June 23, 1969). In both of these opinions, this Office addressed the legality of detailing executive branch attorneys to congressional committees, concluding that section 72a(f) provided legal authority for such assignments. In the 1977 opinion, however, the Office noted that the potential ethical and policy problems of each assignment should be examined carefully by appropriate Department officials.

[3] We note, however, that a nonreimbursable congressional detail raises sufficiently serious legal questions that, as a general matter, they should not be authorized. One possible prohibition to such details is the general rule of appropriations law that prohibits the use of an agency's appropriations for unauthorized purposes. This principle, the so-called "purpose requirement," emanates from 31 U.S C. § 1301(a), which provides that "[a]ppropriations shall be applied only to the objects for which the appropriations were made except as otherwise provided by law." The Comptroller General has interpreted section 1301(a) to restrict the use of appropriated funds by executive branch agencies to compensate their employees who are detailed to congressional committees absent specific statutory authority for such use, stating that it "'must appear that the work of the committee to which the detail or loan of the employee is made will actually aid the agency in the accomplishment of a purpose for which its appropriation was made such as by obviating the necessity for the performance by such agency of the same or similar work.'" 64 Comp. Gen 370, 379 (1985) (quoting 21 Comp Gen. 1055, 1057–58 (1942))

## II. Separation of Powers

We turn next to the question of whether details of Department personnel to congressional committees violate the constitutional principle of separation of powers. The United States Supreme Court has consistently reaffirmed the importance in our constitutional scheme of the separation of governmental powers into the three coordinate branches. *See, e.g., Bowsher v. Synar*, 478 U.S. 714, 725 (1986); *Buckley v. Valeo*, 424 U.S. 1 (1976). In a recent opinion, *Morrison v. Olson*, 487 U.S. 654 (1988), the Court once again recognized that the system of separated powers and checks and balances established in the Constitution was regarded by the Framers as "'a self-executing safeguard against the encroachment or aggrandizement of one branch at the expense of the other.'" *Id.* at 693 (quoting *Buckley v. Valeo*, 424 U.S. at 122). The Court, however, also pointed out that it has never held that the Constitution requires that the three branches of government operate with absolute independence of one another. *Id.* at 693–94 (citing *United States v. Nixon*, 418 U.S. 683, 707 (1974)).

Article II, Section 1 vests the executive power in the President of the United States. The President's Article II, Section 3 duty to "take Care that the laws [are] faithfully executed" recognizes the President's authority to exert "general administrative control over those executing the laws." *Myers v. United States*, 272 U.S. 52, 164 (1926). The pertinent issue in the instant case is whether the President's ability to supervise his subordinates in the performance of their executive branch functions is unconstitutionally impaired by the congressional details. *See Morrison v. Olson*, 487 U.S. at 670–77.

It is our view that although the detailed personnel nominally remain executive branch "employees" during the course of the details, they may not, consistent with constitutional requirements, serve as "officers" performing executive branch functions within the contemplation of Article II. *See generally Buckley v. Valeo*, 424 U.S. 1, 126, 140–41 (1976). As a factual matter, none of the proposed details would appear to transgress this principle. In particular, we are advised that the functions to be performed by the detailed personnel are primarily of an advisory or research nature. For example, as we understand it, the purpose of the prior detail of an FBI Special Agent to the Permanent Subcommittee on Investigations of the Senate Committee on Governmental Affairs was to provide to the Subcommittee substantive expertise on organized crime operations and investigative techniques. Under the proposed extension of this detail, the Special Agent will

---

[3] (. . . continued)

The Comptroller General is an officer of the legislative branch, *Bowsher v Synar*, 478 U S. 714, 727–32 (1986), and, historically, the executive branch has not considered itself bound by the Comptroller General's legal opinions if they conflict with the legal opinions of the Attorney General or of this Office However, we find that in the instant case the Comptroller General's construction of relevant appropriations law is not adverse to our reading of the law. Based on our interpretation of the purpose requirement, we believe that there is a serious question as to whether a Department law enforcement agency reasonably could claim that it is within the agency's mission or purpose to work for committees within the legislative branch.

continue to assist the Subcommittee in fulfilling its mandate, which requires conducting an in-depth analysis of traditional organized crime methods. Another proposed detail would have involved sending a DEA Special Agent to the House Select Committee on Narcotics Abuse and Control to assist the Committee in evaluating the drug enforcement program and work of the DEA.

The functions described above appear to be of a fact-finding or advisory nature performed on behalf of congressional committees charged with oversight of federal law enforcement efforts and, as such, do not constitute the "exercis[e of] significant authority pursuant to the laws of the United States," *Buckley v. Valeo*, 424 U.S. at 126.[4] Nor are they of a law enforcement character which would require that they be performed or supervised by Article II officers.[5] Accordingly, the fact that the detailed employees are supervised by legislative branch personnel does not contravene the Constitution and infringe upon the President's supervisory authority over the executive branch in the exercise of its Article II responsibilities, as long as employees are performing only non-law enforcement, advisory functions.[6]

Even when confined to non-law enforcement and advisory functions, however, we believe that details of executive branch employees to the legislative branch raise substantial separation of powers concerns. In our system of separated powers, the legislative and executive branches often have conflicting interests and thus a detailed employee may be put in the difficult position of choosing between serving the interests of the executive branch and those of the legislative branch. For instance, we note that one DEA agent has been detailed to aid in the evaluation of DEA programs, presumably with a view toward legislation. This surely exacerbates the well-known tension between the executive branch's interest in having administrative flexibility in managing its programs and the legislative branch's interest in imposing more detailed requirements on such management. It seems doubtful that the agent can faithfully defend the interests of the executive branch in such matters when he has been specially detailed to do the legislative branch's bidding.

---

[4] Indeed, assuming that the tasks in which the detailed personnel are assisting the legislative branch are within the legitimate scope of the legislative branch's responsibilities, it necessarily follows that such tasks may be performed by persons other than officers of the United States. Members of Congress can perform all legitimate legislative functions and yet are not officers of the United States.

[5] For example, the functions at issue do not involve investigation of alleged violation of the federal criminal laws for the purpose of presenting cases to federal prosecutors or making arrests for such violations. Such federal law enforcement functions are properly executed by appropriate personnel within the executive branch and could not be performed by an employee detailed to the legislative branch and outside meaningful executive branch supervision.

[6] This is not to say that it would never be legal for detailed Department employees to conduct investigatory work for the committee. Historically, Congress has exercised investigatory power independent of the executive branch's authority to execute the laws. Provided the investigative work of a pertinent congressional committee constitutes a legitimate legislative function, participation of a detailed Department of Justice employee in such an investigation would not violate the Constitution. We note, however, that an investigatory assignment during a congressional detail may exacerbate the separation of powers and ethical considerations discussed here because of the potential overlap between investigatory work performed by Congress and the Department's investigatory work on the same or a related matter. To avoid such conflicts, Department officials should avoid detailing employees to congressional committees when the committee work involves activities that may interfere or overlap with the Department's investigatory efforts.

Beyond this general conflict, there is the specific problem of preserving the confidentiality of executive branch information. In the course of his work in the executive branch a law enforcement agent has access to privileged information, such as information relating to open law enforcement files, national security, and the deliberative process within the executive branch. Placing such an employee in a position in which his work will be related to his former duties in the executive branch, but in which he will be under the daily supervision of legislative branch officials, obviously creates risks that such information may be improperly or inadvertently shared with the legislative branch.

## III. Ethical Considerations

Any requests for such details should also be examined for potential conflicts of interest under applicable professional codes of ethics. In the 1977 opinion discussing the legality and propriety of detailing Department of Justice attorneys to congressional committees, we noted that such details may raise potential ethical problems under such codes. For example, a Department attorney on congressional detail might rely on information he had received in confidence while working at the Department, implicating Canon 4 of the American Bar Association Model Code of Professional Responsibility, which provides that "[a] lawyer should preserve the confidences and secrets of a client."[7]

Although federal law enforcement agents are not guided by a formal code of ethics similar to the American Bar Association's Code of Professional Responsibility, the potential for conflict of interest addressed in our 1977 opinion regarding the detail of Department attorneys could pose similar problems with respect to detailed law enforcement agents. A particularly embarrassing problem could arise if a congressional committee sponsoring the Department detail was considering or advancing legislation that the Department opposed.

In order to reduce the possibility of any conflicts of interest arising from congressional details of Department employees, we recommend that each proposal for such a detail be examined closely for potential conflicts. This examination should involve a close review of the pertinent committee's official mandate. In addition, the committee should be asked to provide a specific description of the work that the agent would be handling while on the detail. Finally, to avoid any questions concerning their proper roles, agents should be reminded, prior to starting their details, that although they continue to be Department of Justice employees during the course of the detail, their new employer is a separate entity within another branch of government that does not have access as a matter of course to Department of Justice information, files, and documents.

---

[7] In the 1977 opinion, we also observed that because the attorney theoretically would be returning to the Department at the conclusion of the detail, it is reasonable that he would, while working for the committee, tend to advance positions taken by the Department if the occasion arose. Because the attorney might not be able to adequately represent the interests of both the Department and the subcommittee, Canon 7 of the Model Code of Professional Responsibility could be implicated. 1 Op. O.L.C. at 108–09 Canon 7 states that "[a] lawyer should represent a client zealously within the bounds of the law."

## Conclusion

We conclude that the details of Department personnel to congressional committees described above are statutorily authorized provided the agreements are reimbursable. We also conclude that the arrangements as proposed do not violate the principle of separation of powers as long as the details are advisory in nature and involve functions not required by the Constitution to be performed by an "officer" of the United States. Nonetheless, because of the substantial policy and ethical concerns such details raise, we believe the Department should consider a reimbursable detail only after a careful examination of the functions to be performed and consideration of the conflicts likely to arise. Accordingly, the Department should accede to a request for an assignment to a congressional committee only when the assignment may be performed by a person other than an "officer" of the United States and when there are particularly compelling policy reasons for the assignment that outweigh the concerns raised here. Moreover, should a detail be authorized, the Department should emphasize to detailed personnel the nature of their ethical responsibilities as Department of Justice employees, which exist notwithstanding their assignments to congressional committees.

DOUGLAS W. KMIEC
*Acting Assistant Attorney General*
*Office of Legal Counsel*